**BRADBURN PARENT TEACHER STORE, INC., on behalf of itself and all others similarly situated**

v.

**3M (MINNESOTA MINING AND MANUFACTURING COMPANY).**

**Civil Action No. 02–7676.**

United States District Court, E.D. Pennsylvania.

May 14, 2007.

---

Charles M. Jones, Jones Osteen Jones & Arnold, Hinesville, GA, Gregory Baruch, J. Daniel Leftwich, Robert Stephen Berry, Berry & Leftwich, Washington, DC, for Bradburn Parent Teacher Store, Inc.

Brent N. Rushforth, Kit A. Pierson, Martina M. Stewart, Paul Alexander, Heller, Ehrman, LLP, Washington, DC, David W. Engstrom, Eleanor Morris Illoway, John G. Harkins, Jr., Harkins Cunningham, Philadelphia, PA, Dean Ringel, Cahill, Gordon & Reindel, New York City, Eric R. Olson, Fred H. Bartlit, Jr., Bartlit Beck Herman Palenchar & Scott LLP, Denver, CO, Jaideep Venkatesan, Heller Ehrman LLP, Menlo Park, CA, Mark S. Ouweleen, Paul J. Skiermont, Bartlit Beck Herman Palenchar & Scott LLP, Chicago, IL, for 3M (Minnesota, Mining and Manufacturing Company).

## MEMORANDUM

PADOVA, District Judge.

Plaintiff Bradburn Parent Teacher Store, Inc. ("Bradburn") has brought this class action antitrust lawsuit against Defendant 3M for damages arising out of 3M's allegedly anti-competitive conduct. Plaintiffs have reached a settlement with 3M, which we preliminarily approved on October 24, 2006. Presently before the Court are Plaintiff's Motion for Final Approval of Settlement (Docket No. 350) and Class Counsel's "Application for Attorneys' Fee, Expenses, and Class Representative Incentive Award" (Docket No. 355). After a Final Approval Hearing held on April 18, 2007, and for the reasons that follow, we grant the Motion for Final Approval and the "Application for Attorneys' Fee, Expenses, and Class Representative Incentive Award" as described in our Final Approval Order and Judgment below.

## I. BACKGROUND

Bradburn brings this action against 3M on behalf of itself and other members of a class, which was approved on August 18, 2004 and includes persons who purchased invisible or transparent tape from 3M at any time from October 2, 1998 to the present, who have not purchased for resale under the class member's own label, any "private label" invisible or transparent tape from 3M or any of 3M's competitors from October 2, 1988 to the present. Bradburn alleges one count of monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, claiming that 3M unlawfully maintained monopoly power in the invisible and transparent tape markets in the United States. (Compl.¶¶ 29–33.)

## A. *Litigation History*

The conduct of 3M that forms the basis of this class action lawsuit was the subject of a prior lawsuit before the Court, *LePage's Inc. v. 3M*, Civ. A. No. 97–3983 (E.D.Pa.). In that suit, LePage's, a competing supplier of transparent tape, sued 3M alleging, *inter alia*, unlawful maintenance of monopoly power in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. The jury found in favor of LePage's on its claim, and we denied 3M's Motion for Judgment as a Matter of Law. *See Le Page's Inc. v. 3M*, Civ. A. No. 97–3983, 2000 WL 280350 (E.D.Pa. Mar. 14, 2000), *aff'd*, 324 F.3d 141 (3d Cir.2003) (en banc), *cert. denied*, 542 U.S. 953, 124 S.Ct. 2932, 159 L.Ed.2d 835 (2004).

On March 1, 2004, we denied Bradburn's initial motion for class certification on the grounds that the inclusion of direct purchasers of transparent tape who had also purchased private label tape (from 3M or elsewhere) could create conflicts in damage theories with class members, such as Bradburn, who had not purchased private label tape, because the private label tape purchasers might benefit from pursuing a "lost profit" rather than an overcharge theory of damages. *Bradburn Parent/Teacher Store v. 3M*, 2004 WL 414047 (E.D.Pa. Mar. 1, 2004).

Bradburn then sought certification of the following modified class:

All persons who directly purchased invisible or transparent tape from 3M Company between October 2, 1998 and the present, who have not purchased, for resale under the class member's own label, any "private label" invisible or transparent tape from 3M Company or any of 3M Company's competitors at any time from October 2, 1988 to the present.

We granted certification of Bradburn's modified class on August 18, 2004. *Bradburn Parent/Teacher Store, Inc. v. 3M*, 2004 WL 1842987 (E.D.Pa. Aug. 18, 2004). In the same order we appointed the following individuals to serve as Class Counsel: R. Steven Berry, J. Daniel Leftwich, Gregory Baruch, and Charles M. Jones.

Following certification, Bradburn sought to apply estoppel to many of the liability findings of the *Le Page's* jury, with some success. In our Order of March 30, 2005, we granted collateral estoppel to Bradburn on several issues (the "Estoppel Order"). *Bradburn Parent/Teacher Store, Inc. v. 3M*, 2005 WL 736629 (E.D.Pa. Mar. 30, 2005). Following a Motion for Reconsideration by 3M pertaining to the Estoppel Order, which we granted in part and denied in part, we deemed the following issues to be established for the purposes of this action: (1) for the time period from June 11, 1993 to October 13, 1999, the relevant market in this matter is the market for invisible and transparent tape for home and office use in the United States; and (2) for some time period from June 11, 1993 to October 13, 1999, 3M possessed monopoly power in the relevant market, including the power to control prices and exclude competition in the relevant market, 3M willfully maintained such monopoly power by predatory or exclusionary conduct, and 3M's predatory or exclusionary conduct harmed competition (the "Amended Estoppel Order"). *Bradburn Parent/Teacher Store, Inc. v. 3M*, 2005 WL 1388929 (E.D.Pa. June 9, 2005). 3M then sought leave to file an interlocutory appeal of the Amended Estoppel Order. We certified the issue for interlocutory appeal. *Bradburn Parent Teacher Store, Inc. v. 3M*, 2005 WL 1819969 (E.D.Pa. Aug. 2, 2005). However, the Third Circuit denied 3M's petition to allow an interlocutory appeal on September 27, 2005.

Following the class and estoppel proceedings, the parties proceeded to full fact

and expert discovery, including dozens of depositions and production and review of more than 1 million pages of documents from 3M and third parties. (Pl. Corr. Mem. in Support at 4–5.) The parties participated in mediation with Jonathan Marks on November 8–9, 2005, but were unable to reach agreement. (*Id.* at 5.) As trial was scheduled to begin on May 30, 2006, the parties filed pretrial memorandum, witness lists, exhibit lists, deposition designation, and motions in limine; and conducted the last round of depositions of experts on the opinions set forth in their supplemental reports. (*Id.*) However, on May 5, 2006, they reached a settlement agreement after another mediation session with Mr. Marks. (*Id.*)

On September 8, 2006, Bradburn filed a Motion for Preliminary Approval of Settlement. We preliminarily approved the Settlement on October 24, 2006. This Order also authorized the dissemination of Notice of Proposed Settlement, scheduled a Final Approval Hearing for April 18, 2007, and set February 7, 2007 as the deadline for objections to the Settlement.

On January 18, 2007, Bradburn filed the instant Motion for Final Approval of the Settlement and Class Counsel's "Application for Attorneys' Fee, Expenses, and Class Representative Incentive Award." The Motion and Application were supported by the following: Declaration of Charles G. Hunter ("Hunter Declaration"); Declaration of Richard Bithell ("Bithell Declaration"); Declaration of Gregory Baruch ("Baruch Declaration"); and Declaration of Geoffrey C. Hazard ("Hazard Declaration"). Bradburn subsequently filed a Corrected Memorandum in Support of Motion for Final Approval of Settlement ("Pl. Corr. Mem. in Support"); Class Counsel's Corrected Application for Attorneys' Fee, Expenses, and Class Representative Award ("Corr.Application"); Memorandum

in Further Support of the Motion and Application ("Pl. Mem. in Further Support"); Second Declaration of Gregory Baruch ("Second Baruch Decl."); Second Declaration of Bithell ("Second Bithell Decl."); and Third Declaration of Bithell ("Third Bithell Decl.").

### B. *The Settlement Agreement*

### 1. *The Class Definition*

The Class certified by the Court, and clarified in the Preliminary Approval Order as to the time period for the Class is defined as follows:

> all persons who directly purchased invisible or transparent tape from 3M Company between October 2, 1998 and February 10, 2006, who have not purchased, for resale under the Class Member's own label, any "private label" invisible or transparent tape from 3M Company or any of 3M Company's competitors at any time from October 2, 1988 to February 10, 2006; but excluding the following: (i) 3M Company, its subsidiaries, affiliates, officers, directors, and employees; (ii) those Persons that timely and validly requested exclusion from the Class in response to the Notice of Pendency of Class Action dated November 29, 2004, provided pursuant to the Court's November 12, 2004 Order; and (iii) any other Person that may be excluded by order of the Court.

### 2. *Terms of the Settlement Agreement*

The Settlement Agreement provides for payment into a common fund of $39,750,000.00 in cash (the "Settlement Consideration"). Following payment of the attorneys' fees, expenses, and any class representative incentive award from the Settlement Consideration, all of the remaining funds are to be distributed to the Class. The Settlement Agreement does not require class members to file

proof of claim forms. Therefore, all class members that can be located will receive a distribution from the common fund. The Settlement Consideration equals between 41 and 48 percent of the damages calculated by Plaintiff's expert Dr. Morton Kamien. (Pl. Corr. Mem. in Support at 7.) The Settlement Consideration results in an award of more than 18.5 percent of the Class's transparent tape purchases during the more than seven year damage period. (*Id.*) In return for the Settlement Consideration, the parties agree to dismiss the case with prejudice and the Class members agree to release and discharge 3M from any and all claims asserted, or which could have been asserted, in the litigation. The release includes all claims and potential claims concerning any 3M discount, rebate, offer, promotion or other sales program or practice (including, without limitation, programs claimed to involve the bundling of products or volume growth rebates) relating in any way to the sale, promotion, or distribution of invisible or transparent tape for home or office use in effect from January 1, 1993 to the Settlement Agreement Date, September 5, 2006.

### C. *Final Approval Hearing*

On April 18, 2006, we held a Final Approval Hearing to address the Motion for Final Approval and the Application for Fees, Expenses, and Class Representative Incentive Award. At the Final Approval Hearing, Class Counsel reported that no objections or requests for entry of appearance through separate counsel have been filed, and no correspondence has been received that would indicate a Class Member's interest in raising an objection in response to the Notices mailed before or after the original objections deadline. The parties agreed to an extension until May 3, 2007 to allow time for 71 Class Members, whose addresses had only recently been identified and who were sent a Notice of the proposed Class Settlement on or before April 9, 2007, to file any objections. Class Counsel subsequently reported to the Court on May 3, 2007, that no objections have been filed by these 71 remaining Class Members.

## II. MOTION FOR FINAL APPROVAL OF SETTLEMENT

"The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson,* 521 F.2d 153, 156 (3d Cir.1975). "While the law generally favors settlement in complex or class action cases for its conservation of judicial resources, the court has an obligation to ensure that any settlement reached protects the interests of the class members." *In re Aetna Inc. Sec. Litig.,* MDL No. 1219, 2001 WL 20928, at *4 (E.D.Pa. Jan. 4, 2001) (citing *In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 784 (3d Cir.1995)). Consequently, prior to approving a settlement, the Court must determine whether the notice provided to class members was adequate. *Id.* (citations omitted). The Court must also "scrutinize the terms of the settlement to ensure that it is 'fair, adequate and reasonable.' " *Id.* (quoting *In re General Motors,* 55 F.3d at 785).

### A. *Adequacy of Notice*

The due process demands of the Fifth Amendment and the Federal Rules of Civil Procedure require adequate notice to class members of a proposed settlement. *In re Aetna,* 2001 WL 20928, at *5. "In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." *In re Pruden-*

*tial Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 306 (3d Cir.1998) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)). The due process requirements of the Fifth Amendment are satisfied by the "combination of reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class." *Id.* The notice must be " 'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Lachance v. Harrington*, 965 F.Supp. 630, 636 (E.D.Pa.1997) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

Moreover, "in a settlement class maintained under Rule 23(b) (3), class notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e)." *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 226 F.R.D. 498, 517 (E.D.Pa. 2005) (citing *Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 324–25 (E.D.Pa. 1993)). Rule 23(c) (2) provides that class members must receive the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2)(B). Rule 23(c)(2) also requires that "the notice indicate an opportunity to opt out, that the judgment will bind all class members who do not opt out and that any member who does not opt out may appear through counsel." *In re Diet Drugs*, 226 F.R.D. at 517 (citing Fed.R.Civ.P. 23(c)(2)).

■ In addition to the requirements of Rule 23(c)(2), Rule 23(e) "requires that notice of a proposed settlement must inform class members: (1) of the nature of the pending litigation; (2) of the settlement's general terms; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the Fairness Hearing." *Id.* at 517–18 (citation omitted). The court should consider both "the mode of dissemination and its content to assess whether notice was sufficient." *Id.* Although the "notice need not be unduly specific . . . the notice document must describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *Id.* at 518 (citing *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 369 F.3d 293, 308–10 (3d Cir.2004)).

■ We find that the Notice provided in this case satisfies the requirements of due process and the Federal Rules of Civil Procedure. Pursuant to the Settlement Agreement and the Court's Preliminary Approval Order, Poorman–Douglas Corp. ("PDC") was authorized and appointed to serve as Settlement Administrator in this matter, and was responsible for assisting with the administration of the Settlement by, among other things, mailing the Class Notice to Class Members, and identifying Class Members whose initial Notices were returned as undeliverable. (Bithell Decl. ¶ 4.) The Settlement Class consists of 3,574 Class Members identified in the 3M data provided to Plaintiff and PDC. (Second Bithell Decl. ¶ 5.) PDC mailed the Notice of the Proposed Class Settlement to each Class Member on the Class Member list on January 8, 2007. (Bithell Decl. ¶ 6.) Included in the notice was a special insert sheet that calculated each class member's approximate percentage share of the Net Settlement Amount. (*Id.*) For undeliverable Notices, PDC performed a database search for a new address for the Class Members using an address search database owned and operated by Lexis/Nexis. (Second Bithell Decl. ¶ 6.) New addresses

were found for 952 Class Members, and a Notice was re-mailed to them on or before January 18, 2007. (Bithell Decl. ¶ 7.) PDC performed additional searches using the Internet and telephone contacts for those Class Members whose Notices were undeliverable and who had award amounts of $1,000 or more. (Second Bithell Decl. ¶ 7.) Ninety-three Class Members met this criteria. (*Id.*) PDC located a new address for 48 of them and mailed Notices to them on or before March 30, 2007. (*Id.*) Finally, PDC performed additional searches using the Internet and telephone contact for those Class Members whose Notices were undeliverable and who had award amounts of $100 or more. (Third Bithell Decl. ¶ 4.) One hundred and sixty-four Class Members met this criteria. (*Id.*) PDC located a new address for 71 of them and mailed Notices to them on or before April 9, 2007. (*Id.*) PDC also hosted a website, www. bradburntapesettlement.com, as well as a dedicated toll free telephone line for claimant access. As a result of PDC's efforts to locate valid addresses for the Class Members, the total number of Class Members for whom Notice was undeliverable is just 257 out of the 3,574 Class Members identified in 3M's sales data. (*Id.* ¶ 8.) The percentage of tape sales during the damage period (and the percentage of proposed settlement funds) represented by these undeliverable Notices in 2.86 percent. (*Id.*) We find that these efforts to disseminate notice were the best practicable. *See Zimmer Paper Prods., Inc. v. Berger & Montague,* 758 F.2d 86, 90 (3d Cir.1985) (noting that "in the usual situation first-class mail and publication in press fully satisfy the notice requirements of both Fed.R.Civ.P. 23 and the due process clause").

We also find the content of the Notice to be adequate under the due process clause and Rule 23. The Notice describes the nature and background of this action and defines the Class, Class claims, and consequences of Class Membership. (Pl. Corr. Mem. in Support, Ex. B.) It summarizes the terms of the Settlement, including information relating to the size of the Settlement Fund; the release provisions of the Settlement; and the attorneys' fees, expenses, and incentive award for which Bradburn may apply. (*Id.*) The Notice also describes the proposed Distribution Plan. (*Id.*) The Notice informs Class Members of the time and date of the Final Approval Hearing, and advises them of the nature and purpose of the Hearing, of their rights to object to the Settlement and appear at the Hearing, and of the procedure for asserting those rights. (*Id.*) The Notice includes the contact information of the relevant attorneys and of the Settlement Administrator, and also directs Class Members to the dedicated website where additional information pertaining to the case maybe found. (*Id.*) After reviewing the Notice, we conclude that the substance, like the method of dissemination, is sufficient to satisfy the concerns of due process and Rule 23. *See In re Prudential,* 148 F.3d at 328; *In re Aetna,* 2001 WL 20928, at *5 (citing *In re Ikon Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166, 175 (E.D.Pa.2000)).

**B. Presumption of Fairness**

■ Rule 23(e) of the Federal Rules of Civil Procedure requires that the Court must approve any settlement of a class action and states that the Court may only approve a settlement "after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(1). The Third Circuit has determined that a court should accord a presumption of fairness to a settlement if the court finds that: "(1) the negotiations occurred at arms length; (2) there was suffi-

cient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n. 18 (3d Cir.2001) (citing *In re General Motors*, 55 F.3d at 785).

The Settlement in this case is entitled to a presumption of fairness. The Settlement resulted from arm's-length negotiations that occurred both during the Court-suggested mediation and in the months following mediation. (Pl. Corr. Mem in Support at 8.) This case was settled only after all discovery, lasting more than one year, was completed. (Hazard Decl. ¶ 11.) Class Counsel has extensive experience litigating complex actions such as the one at hand. (Baruch Decl. ¶ 3.) Lastly, no Class Members filed objections to the Settlement. Accordingly, we will apply a presumption of fairness in analyzing the Settlement.

### C. *The Girsh Factors*

■ The Third Circuit developed a nine factor test in *Girsh*, "which provides the analytic structure for determining whether a class action settlement is fair, reasonable, and adequate under Rule 23(e)." *In re Cendant*, 264 F.3d at 231 (citation omitted). The nine factors are:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in

light of all the attendant risks of litigation.

*Id.* at 232 (citing *Girsh*, 521 F.2d at 157). Upon consideration of these factors, we find that the proposed Settlement is fair, reasonable, and adequate.

### 1. *Complexity, expense, and likely duration of the litigation*

"This factor captures 'the probable costs, in both time and money, of continued litigation.'" *Id.* at 233 (quoting *In re General Motors*, 55 F.3d at 812). An antitrust class action, such as this one, is "arguably the most complex action to prosecute" as "[t]he legal and factual issues involved are always numerous and uncertain in outcome." *In re Linerboard Antitrust Litig.*, 296 F.Supp.2d 568, 577 (E.D.Pa.2003) (citations and internal quotation marks omitted).

The parties to this action have spent nearly four years litigating these claims. This litigation has included two class certifications, several hearings on the court's estoppel rulings, more than a full year of discovery, and virtually complete trial preparation. Whatever the disposition of the case on the merits, litigation likely would have continued for some time thereafter through post-trial motions and appeal. *See In re Ikon*, 194 F.R.D. 166, 179 (E.D.Pa.2000) ("[T]he extremely large sums of money at issue almost guarantee that any outcome, whether by summary judgment or trial, would be appealed."). The time and resources saved by the avoidance of these costs benefit all parties. *See In re Warfarin*, 391 F.3d at 536 ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of recovery to the class."); *In re Aetna*, 2001 WL 20928, at *6 (noting that "[t]he risk of delay could have deleterious effects on any future recovery due to the time value of

money"). Thus we find that the complexity, expense, and likely duration of the litigation favor settlement. *See In re Prudential,* 148 F.3d at 318 ("[T]he trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court. The prospect of such a massive undertaking clearly counsels in favor of settlement.").

## 2. *The reaction of the class*

This factor "attempts to gauge whether members of the class support the settlement." *Id.* As stated above, Notice of this Settlement was disseminated thoroughly by means of publication and first-class mail, and informed potential Class Members of their rights to object to the Settlement and to request exclusion from the Class. The deadline for filing objections and requesting exclusion was originally February 7, 2007. As of the Final Approval Hearing on April 18, 2007, no objections had been filed. (Pl. Mem. in Further Support at 7.) At the Final Approval Hearing, the parties suggested and we agreed to extend the deadline for the filing of objections until May 3, 2007 for the additional 71 Class Members who had recently been sent their Notices of Settlement. As of May 6, 2007, Class Counsel reported to the Court that no objections have been filed.

This total absence of objections argues in favor of the proposed Settlement. *See Sala v. Nat'l R.R. Passenger Corp.,* 721 F.Supp. 80, 83 (E.D.Pa.1989) ("The utter absence of objections from the class itself militates strongly in favor of approval of the settlement."). The lack of objections is also particularly notable in this case as "these are sophisticated businesses with, in some cases, large potential claims, and they could be expected to object to a settlement they perceived as unfair or inadequate." *In re Warfarin Sodium Antitrust*

*Litig.,* 212 F.R.D. 231, 254–55 (D.Del. 2002), *aff'd,* 391 F.3d 516 (3d Cir.2004). Accordingly, we find that the reaction of the Class in this case strongly favors approval of the Settlement.

## 3. *Stage of proceedings and amount of discovery completed*

This factor enables the Court to " 'determine whether counsel had an adequate appreciation of the merits of the case before negotiating.' " *In re Cendant,* 264 F.3d at 235 (quoting *In re General Motors,* 55 F.3d at 813). This case was on the eve of trial, with all discovery having been completed, when settlement was reached through arm's-length negotiations with the assistance of a mediator. (Pl. Corr. Mem. in Support at 11.) All of the pertinent liability and damages issues had been analyzed by Plaintiff's counsel and experts. (*Id.*) Prior to agreeing to a settlement, the parties had taken 42 depositions, completed expert reports, and conducted extensive partial summary judgment motion practice. (*Id.*) 3M had also produced more than one million pages of documents for review and copying; produced large amounts of computer date on tape sales, rebates, and margins covering at least a seven year period, all of which was analyzed an used to support the expert reports submitted by Bradburn's testifying expert; and responded to several sets of Bradburn's interrogatories. (*Id.*) Third party discovery in this matter took more than one year due to motions to compel and for protective orders filed in several other district courts by third parties and 3M. (*Id.*) In total, more than 60,000 pages of documents were produced by third parties, and 3M and Bradburn took 10 depositions of third party witnesses. (*Id.*) Moreover, prior to reaching the Settlement, the parties had engaged in several face-to-face settlement negotiations, during which each side's potential strengths and weaknesses

were presented and evaluated. (*Id.*) We conclude, therefore, that the parties had "an adequate appreciation of the merits" of this case at the time they negotiated the Settlement. *In re Cendant*, 264 F.3d at 235 (citation omitted).

### 4. *Risks of establishing liability*

This factor enables the Court to examine " 'what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them.' " *In re Cendant*, 264 F.3d at 237 (quoting *In re General Motors*, 55 F.3d at 814). "When considering this factor, the court should avoid conducting a mini-trial. Rather the court may 'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action.' " *In re Aetna*, 2001 WL 20928, at *9 (quoting *In re Ikon*, 194 F.R.D. at 181).

Antitrust actions are among the most high risk, complex cases to litigate. *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, Civ. A. No. 03–4578, 2005 WL 1213926, at *11 (E.D.Pa. May 19, 2005); *In re Linerboard Antitrust Litig.*, 296 F.Supp.2d 568, 577 (E.D.Pa.2003); *In re NASDAQ Market–Makers Antitrust Litig.*, 187 F.R.D. 465, 475 n. 10 (S.D.N.Y. 1998) ("Recurrently, when some of the largest members of the antitrust classes have opted out of the class to try to do better than the class, they have failed to establish impact or other elements of liability, and have lost their cases at trial."). In order to succeed on its claim that 3M violated § 2 of the Sherman Act, Bradburn "must establish that [3M] possessed monopoly power in the [relevant] market and that it willfully acquired or maintained that power as distinguished from achieving growth or development as a consequence

of a superior product, business acumen, or historic accident." *In re Warfarin*, 391 F.3d at 529 n. 11 (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)).

Bradburn's risks of establishing liability in this case are diminished by the *Le Page's* verdict and the Amended Estoppel Order. However, the Amended Estoppel Order left many issues unresolved and Bradburn, therefore, still faced numerous challenges in establishing 3M's liability in this case. For example, the Amended Estoppel Order left intact Bradburn's obligation to prove injury and damages. Even if 3M had monopolized the market and harmed competition for some period between 1993 and 1999, 3M could still argue that this did not affect purchases of transparent and invisible tape. Additionally, the market definition rulings extended only into 1999. Therefore, the market definition could be re-litigated for the period from October 13, 1999 to the present, and 3M had argued that the market had substantially changed since the time of the *Le Page's* trial, and had become international. (Pl. Corr. Mem in Support at 13–14.) Thus, while the Amended Estoppel Order provided some potential efficiencies at trial, substantial trial risk remained for the Bradburn class. We concluded that, given these challenges, this factor favors settlement.

### 5. *Risks of establishing damages*

"Like the fourth factor, 'this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time.' " *In re Cendant*, 264 F.3d at 238–39 (quoting *In re General Motors*, 55 F.3d at 816). In conducting this inquiry, we consider the "potential damage award if the case were taken to trial against the benefits of immediate settlement." *In re Warfarin*, 212 F.R.D. at

256 (citing *In re Prudential*, 148 F.3d at 319). Plaintiff's damage expert, Dr. Kamien, calculated overcharge damages to be in the range of $82,693,181 to $96,449,176. (Pl. Corr. Mem. in Support at 15.) 3M's experts, however, contended that, contrary to Class Plaintiff's overcharge damage theory, prices were declining or stable in real terms, and also challenged other aspects of Class Plaintiff's damage methodology. (*Id.* at 16.) Particularly in complex antitrust actions, the parties' efforts to dispute damages at trial undoubtedly would result in a " 'battle of the experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe." *In re Cendant*, 264 F.3d at 239. For these reasons, we conclude that the risks of establishing damages weigh in favor of settlement in this case.

### 6. *Risks of maintaining class action status through trial*

This factor allows the Court to weigh the possibility that, if a class were certified for trial in this case, it would be decertified prior to trial. Federal Rule of Civil Procedure 23(a) provides that "a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable, and proceeding to trial would always entail the risk, even if slight, of decertification." *In re Cendant*, 264 F.3d at 239 (citation and internal quotations omitted). In this action, class certification was denied initially. *See Bradburn Parent/Teacher Store v. 3M*, 2004 WL 414047, at *1. The class was certified only after a second motion for class certification. *See Bradburn Parent/Teacher Stores, Inc. v. 3M*, 2004 WL 1842987, at *1. "There will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *In re Prudential*, 148 F.3d at 321. Consequently, we find

that this factor weighs in favor of approving the Settlement.

### 7. *Ability of defendants to withstand greater judgment*

This factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant*, 264 F.3d at 240. As we noted in the *Meijer* case, "3M, with 2005 annual net sales of $21.2 billion (3M 2005 Annual Report), likely can withstand a judgment significantly greater than the Settlement Amount [of approximately $28 million]. Even so, this determination in itself does not carry much weight in evaluating the fairness of the Settlement." *Meijer, Inc. v. 3M*, Civ. A. No. 04–5871, 2006 WL 2382718, *16 (E.D.Pa. Aug. 14, 2006) (citing *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 116 (E.D.Pa.2005) ("Fleet could certainly withstand a much larger judgment as it has considerable assets. While that factor weighs against approving the settlement, this factor's importance is lessened by the obstacles the class would face in establishing liability and damages.")). Accordingly, we find that this factor disfavors settlement, albeit very slightly.

### 8. & 9. *Range of reasonableness (in light of best possible recovery and risks of litigation)*

The eighth and ninth *Girsh* factors "ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *In re Aetna*, 2001 WL 20928, at *11 (citing *In re Prudential*, 148 F.3d at 322). In making this assessment, we compare " 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing' " with " 'the amount of the proposed settlement.' " *In*

re General Motors, 55 F.3d at 806 (quoting Manual for Complex Litigation 2d § 30.44). The damages estimates should "generate a range of reasonableness (based on size of the proposed award and the uncertainty inherent in these estimates) within which a district court approving (or rejecting) a settlement will not be set aside." Id. (citation omitted). "The primary touchstone of this inquiry is the economic valuation of the proposed settlement." Id. "In making this assessment, the evaluating court must recognize that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and guard against demanding too large a settlement based on the court's own view of the merits of the litigation." In re Aetna, 2001 WL 20928, at *11 (citing In re General Motors, 55 F.3d at 806).

Pursuant to the Settlement Agreement, Class Members will receive immediate monetary relief in accordance with their relevant purchases of 3M tape, without undertaking the risks, costs, and delays of further litigation. The proposed Settlement provides between approximately 41 and 48 percent of the damages calculated by Plaintiff's expert economist. (Pl. Corr. Mem. in Support at 19.) This result is significantly above the typical antitrust settlement, and courts routinely grant approval to settlements that involve recoveries that represent a much lower percentage of the actual damages. See Stop & Shop Supermarket Co., 2005 WL 1213926, *9 (holding that a recovery of 11.4 percent of actual damages "compares favorably with the settlements reached in other complex class action lawsuits"); Nichols v. SmithKline Beecham Corp., Civ. A. No. 00–6222, 2005 WL 950616, *16 (E.D.Pa. Apr. 22, 2005) (approving settlement for between 9.3 and 13.9 percent of actual damages); In re Ravisent Technologies, Inc. Securities Litig., 2005 WL 906361, *9

(E.D.Pa. Apr. 18, 2005) (finding that 6 to 12 percent of potential recovery generally reasonable); Lazy Oil Co. v. Witco Corp., 95 F.Supp.2d 290, 339 (W.D.Pa.1997) (noting cases approving settlements for 0.2 to 16 percent of potential recovery).

The Settlement Consideration also represents more than 18.5 percent of 3M sales to Class Members. (Pl. Corr. Mem. in Support at 19.) This is also far above settlements approved in other cases. See Meijer Inc. v. 3M, Civ. A. No. 04–5871, 2006 WL 2382718, *20 (E.D.Pa. Aug. 14, 2006) (approving settlement where the settlement fund represented 2% of the sales to class members, and which the Court observed "compares favorably with other class action antitrust settlements"); Auto Refinishing Paint Antitrust Litig., 2004 WL 1068807 at *2 (settlement approved for 2% of sales). Moreover, there is no indication that this Settlement Amount has been reached inappropriately, or should otherwise be considered suspect; both parties have demonstrated willingness and ability to litigate this action, have engaged in mediation, and have reached an agreement that provides Class Members with monetary relief that is immediate, significant, and in line with or better than other comparable settlements. See In re Aetna, 2001 WL 20928, at *11 ("Additionally, the hallmarks of a questionable settlement are absent. Plaintiffs will receive a significant monetary settlement, and there is no suggestion of collusion between Defendants and Plaintiffs' counsel.") (internal quotation marks omitted). Accordingly, we find that the Settlement represents a reasonable compromise in light of both the best possible recovery and the risks of litigation.

Thus, of the nine Girsh factors, we find that only factor seven (the ability of 3M to withstand greater judgment) weighs against approving the Settlement. This

one factor is outweighed by the other *Girsh* factors favoring the Settlement. We, therefore, conclude that the Settlement Agreement is fair, adequate, and reasonable.

### D. *Fairness of the Distribution Plan*

■ In addition to analyzing the terms of the Settlement Agreement, the Court must also examine the fairness of the proposed Distribution Plan. " 'Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.' " *In re Ikon,* 194 F.R.D. at 184 (quoting *In re Computron Software Inc.,* 6 F.Supp.2d 313, 321 (D.N.J.1998)). "Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *In re Aetna,* 2001 WL 20928, at *12 (citing *In re Ikon,* 194 F.R.D. at 184).

■ The proposed Distribution Plan allocates the Settlement Fund among Class Members based upon their pro rata share of the Class's total transparent tape purchases from 3M during the damage period, net of invoice adjustments and rebates paid as of the date of the settlement. (Hunter Decl. ¶¶ 8–10.) The Distribution Plan provides a straightforward method for determining each Class Member's pro rata share of the net Settlement Fund. The calculations and distribution methodology were overseen by the Leaf Group, consulting experts on computer data and damages issues throughout this litigation, as well as Class Counsel and PDC. (Hunter Decl. ¶ 2, Bithell Decl. ¶ 6.) We find that the proposed distribution methodology is fair, reasonable, and adequate. *See In re Remeron Direct Purchaser Antitrust Litig.,* Civ. A. No. 03–0085, 2005 WL 3008808, *11 (D.N.J. Nov. 9, 2005) ("Plaintiffs propose to allocate the Settlement funds, net of Court approved attorneys' fees, incentive award, and expenses ... in proportion to the overcharge damages incurred by each Class member due to Defendants' alleged conduct in restraint of trade. Such a method of allocating the Net Settlement Fund is inherently reasonable."); *see also In re Corel Corp. Inc. Securities Litig.,* 293 F.Supp.2d 484, 493 (E.D. Pa. Jan. 4, 2001) (noting that courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.").

In sum, we find that the content and dissemination of Notice in this case satisfies the requirements of due process and the Federal Rules of Civil Procedure, and we also find that the Settlement Agreement is fair, adequate and reasonable in light of all relevant considerations. We therefore grant final approval to the Settlement. We further find that the proposed Distribution Plan is fair, reasonable and adequate, and approve the Plan.

### III. APPLICATION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD

Class Counsel request that the Court grant the following, to be distributed from the common fund established by the Settlement: (1) a class representative incentive award of $75,000 to Bradburn/Teacher Store; (2) an award of attorneys' fees of $13,912,500, or 35% of the Settlement common fund; and (3) an award of costs and expenses of $1,011,375 for reimbursement of expenses incurred by counsel on behalf of the class.

### A. *Expenses*

■ "Attorneys who create a common fund for the benefit of a class are entitled

to reimbursement of reasonable litigation expenses from the fund." *In re Aetna,* 2001 WL 20928, at *13 (citing *In re Ikon,* 194 F.R.D. at 192). Class Counsel request reimbursement for expenses in the amount of $1,011,375. This consists of $983,463 for expenses that have been incurred since the beginning of this litigation in 2002, and includes costs incurred in connection with the prosecution and settlement of the litigation for items such as: expert fees; travel; document production; depositions and transcripts; settlement administration; mediation; document storage; online legal research; and class notice. (Baruch Decl. ¶ 6). The remainder of the requested expenses, i.e. $27,912, represents estimated future expenses. (Baruch Decl. ¶¶ 6–8, Second Baruch Decl. ¶¶ 2–3.) The estimated future expenses consist of $23,662 for claims administration, $3,500 in travel expenses for the April 18, 2007 Hearing, and $750 in off-site document storage through June 2007. (Baruch Decl. ¶ 8.) As Class Counsel notified Class Members that they would seek reimbursement of up to $1,400,000 in litigation and settlement expenses, (Pl. Corr. Mem. in Support, Ex. B at 3.), the total amount of expenses for which they now seek reimbursement is within that amount. Moreover, no objections have been filed in response to this request for reimbursement. Accordingly, we find that the litigation expenses enumerated by Class Counsel are reasonable and we grant Class Counsel's request for reimbursement. *See In re Remeron End–Payor Antitrust Litig.,* Civ. A. No. 02–2007, 2005 WL 2230314, at *32, 2005 U.S. Dist. LEXIS 27011, at *92 (D.N.J. Sept. 13, 2005) (approving reimbursement of expenses which "reflect costs expended for purposes of prosecuting this litigation, including substantial fees for experts; substantial costs associated with creating and maintaining an electronic document database; travel and lodging ex-

penses; copying costs; and the costs of deposition transcripts").

#### B. *Attorneys' Fees*

■ "District courts approving class action settlements must thoroughly review fee petitions for fairness. Although the ultimate decision as to the proper amount of attorneys' fees rests in the sound discretion of the court, the court must set forth its reasoning clearly." *In re Aetna,* 2001 WL 20928, at *13 (citations omitted). Thorough review of fee arrangements is critical in the context of a class action settlement because of " 'the danger ... that the lawyers might urge a class settlement at a low figure or on a less-than optimal basis in exchange for red-carpet treatment for fees,' " *In re General Motors,* 55 F.3d at 820 (quoting *Weinberger v. Great N. Nekoosa Corp.,* 925 F.2d 518, 524 (1st Cir.1991)), and because the parties to the action might lack sufficient incentive to object to the arrangement. *In re AT&T Corp. Sec. Litig.,* 455 F.3d 160, 168 (3d Cir.2006).

Courts typically use one of two methods for assessing attorneys' fees, either the percentage of recovery method or the lodestar method. *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 300 (3d Cir.2005). We utilize the percentage of recovery method in this case as it is "generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.' " *Id.* (quoting *In re Prudential,* 148 F.3d at 333). As the Third Circuit recommends, however, we use the lodestar method "to 'cross-check' the percentage fee award," in order to verify that the fee award is not excessive. *Id.* at 305 (citing *In re Prudential,* 148 F.3d at 333).

Class Counsel have requested attorneys' fees of $13,912,500, or 35% of the Settle-

ment Fund. When a district court uses the percentage of recovery method, it "first calculates the percentage of the total recovery that the proposal would allocate to attorneys fees by dividing the amount of the requested fee by the total amount paid out by the defendant; it then inquires whether that percentage is appropriate based on the circumstances of the case." *In re Cendant,* 264 F.3d at 256. "The percentage will be based on the net settlement fund after deducting the costs of litigation." *In re Aetna,* 2001 WL 20928, at \*14 (citing *In re Ikon,* 194 F.R.D. at 193); *see also Meijer, Inc.,* 2006 WL 2382718, at \*19 (calculating the percentage recovery based on the net settlement fund). In this case, Class Counsel appear to have erroneously calculated the requested award based on the *gross* settlement amount, rather then the *net* settlement amount. Because Class Counsel argue in their Corrected Application for Attorneys' Fee, Expenses, and Class Representative Award that 35% of the settlement amount is reasonable under the percentage of recovery method of assessing attorneys' fees, we will consider whether the requested attorney award of 35% of the net settle-. ment amount (i.e.$13,558,518) is reasonable.

In *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190 (3d Cir.2000), the Third Circuit directed district courts to consider the following seven factors when determining whether a percentage of recovery fee award is reasonable:

(1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and the awards in similar cases.

*Id.* at 195 n. 1; *see also In re Rite Aid,* 396 F.3d at 301. "Since this is a flexible and fact-driven determination," *In re Aetna,* 2001 WL 20928, at \*14, district courts are not limited to the *Gunter* factors in their analysis of the fee request's reasonableness. As the Third Circuit recently noted:

This list [of *Gunter* factors] was not intended to be exhaustive.... In Prudential, we noted. three other factors that may be relevant and important to consider: (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) any 'innovative' terms of the settlement.... In reviewing an attorneys' fees award in a class action settlement, a district court should consider the Gunter factors, the Prudential factors, and any other factors that are useful and relevant with respect to the particular facts of the case.

*In re AT & T,* 455 F.3d 160, 165–66 (citing *In re Prudential,* 148 F.3d at 338–340). While the district courts should "engage in robust assessments of the fee award reasonableness factors when evaluating a fee request," *In re Rite Aid,* 396 F.3d at 302, these factors " 'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.' " *In re AT & T,* 455 F.3d 160, 165–66 (quoting *In re Rite Aid,* 396 F.3d at 301); *see also In re Cendant Corp. PRIDES Litig.,* 243 F.3d 722, 736 (3d Cir.2001) ("[A] district court may not rely on a formulaic application of the ap-

propriate range in awarding fees but must consider the relevant circumstances of the particular case.").

### 1. Size of fund created and number of persons benefitted

Class Counsel have obtained for the class a common fund of $39,750,000 in cash, less expenses, attorneys' fees, and incentive award, benefiting more than 3000 Class Members. As discussed above, the Settlement Consideration represents 18.5 percent of what Class Members paid to 3M for invisible and transparent tape during the damage period, and amounts to 41 to 48 percent of the total single damages claimed by the class. As the Settlement does not require Class Members to file proof of claim forms, all Class Members that can be located will receive a distribution from the common fund. Therefore, this factor weighs in favor of finding that the percentage of the settlement fund requested is appropriate.

### 2. Presence or absence of substantial objections by members of the class

There have been no objections either to the Settlement Agreement or to the requested attorneys' fees. The absence of objections to the requested attorneys' fees in this case is particularly notable given the sophisticated nature of the absent Class Members. See In re Remeron Direct Purchaser Antitrust Litig., 2005 WL 3008808, at *13 n. 1 ("When a class is comprised of sophisticated business entities that can be expected to oppose any request for attorney fees they find unreasonable, the lack of objections 'indicates the appropriateness of the [fee] request.'" (alteration in original) (quoting Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp. Ins., Civ. A. Nos. 89–822, 89–1186, 1993 WL 355466, at *1–2 (W.D. Ok. June 8, 1993))); Stop & Shop Supermarket Co., 2005 WL 1213926, at *10 (finding that this factor weighs in favor of approval because,

"[a]lthough the Settlement Class in this case is relatively small and consists of sophisticated businesses, not one member of the Settlement Class objected to the requested fee"). We find that the total absence of objections to the requested fees weighs in favor of finding that the percentage of the settlement fund requested is appropriate. See In re Linerboard Antitrust Litig., MDL No. 1261, 2004 WL 1221350, at *5 (E.D.Pa. June 2, 2004) ("The absence of objections supports approval of the Fee Petition."); In re Rent–Way Sec. Litig., 305 F.Supp.2d 491, 515 (W.D.Pa.2003) ("[T]he absence of substantial objections by other class members to the fee application supports the reasonableness of Lead Counsels' request."); In re Aetna, 2001 WL 20928, at *15 ("[T]he Class members' view of the attorneys' performance, inferred from the lack of objections to the fee petition, supports the fee award.").

### 3. Skill and efficiency of the attorneys involved

The skill and efficiency of Class Counsel are "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." In re Ikon, 194 F.R.D. at 194 (citation omitted). Class Counsel are experienced in complex class action litigation (Baruch Decl. ¶ 3), and have obtained a significant settlement for the Class despite the complexity and challenges of this case. Accordingly, this factor favors finding that the percentage of the settlement fund requested is appropriate.

### 4. Complexity and duration of the litigation

As mentioned above, courts have stated that antitrust class action are perhaps the

most complex cases to litigate. *Stop & Shop Supermarket Co.*, 2005 WL 1213926, *11; *In re Linerboard Antitrust Litig.*, 296 F.Supp.2d 568, 577 (E.D.Pa.2003). This action was filed more than four years ago, and involved litigation over class certification and collateral estoppel, expert testimony on both class certification and the merits, and numerous depositions. At the time of settlement, the parties had submitted pretrial memoranda, completed expert depositions, and were ready for trial. Though Plaintiff benefited from our estoppel ruling, there remained complex challenges in establishing liability and damages in this case, as discussed above. Accordingly, this factor weighs in favor of finding that the percentage of the settlement fund requested is appropriate.

### 5. *Risk of nonpayment*

Class Counsel's compensation for their services in this case was wholly contingent on the success of the litigation. (Hazard Decl. ¶ 25.) Given the risks of establishing liability and damages discussed above, the possibility of non-payment has been present throughout this litigation. Accordingly, this factor weighs in favor of finding that the percentage of the settlement fund requested is appropriate.

### 6. *Amount of time devoted to the case by Plaintiffs' counsel*

Class Counsel spent more than four years, more than 9,000 hours in attorney time, and approximately 2,000 hours in paralegal time working on this case. (Baruch Decl. ¶ 2.) Due to the significant number of hours devoted to this litigation and the duration of this litigation, this factor weighs in favor of finding that the percentage of the settlement fund requested is appropriate.

### 7. *Awards in similar cases*

This factor requires the Court to compare the percentage of recovery requested as a fee in this case against the percentage of recovery awarded as a fee in other common fund cases in which the percentage of recovery method, rather than the lodestar method, was used. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 737. Class Counsel request attorneys' fees that produce a percentage of recovery of 35%. This percentage of recovery is slightly above the typical range of common fund attorneys' award in securities and antitrust litigation. *See* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 14:6 (4th ed. 2006) ("In the normal range of common fund recoveries in securities and antitrust suits, common fee awards fall in the 20 to 33 per cent range."). In *In re Rite Aid*, the Third Circuit noted three studies which found that fee awards ranging between 25–33% of the common fund were not unusual. *In re Rite Aid*, 396 F.3d at 303 ("[O]ne study of securities class action settlements over $10 million … found an average percentage fee recovery of 31%; a second study by the Federal Judicial Center of all class actions resolved or settled over a four-year period … found a median percentage recovery range of 27–30%; and a third study of class action settlements between $100 million and $200 million … found recoveries in the 25–30% range were 'fairly standard.' ") (citations omitted). Several decisions have awarded one-third of the fund as a fee though the settlements in those cases were substantially less successful than here. *See Ravisent Technologies*, Civ. A. No. 001014, 2005 WL 906361, *9, 10–12 (E.D.Pa. Apr. 18, 2005) (granting one-third of the settlement fund in attorneys' fees where the settlement fund totaled 12.2% of the maximum possible damages); *In re General Instrument Securities Litig.*, 209

F.Supp.2d 423, 431, 433–34 (E.D.Pa.2001) (granting one-third of settlement fund in attorneys' fees where settlement fund totaled 11% of damages). Because the requested fee percentage is only slightly higher than the percentages awarded in those cases and the settlement in this case provides a common fund that represents a much higher percentage share of the Class Members' damages than did the common funds in those cases, this factor supports a finding that the percentage of the settlement fund requested is appropriate.

We conclude that each of the seven *Gunter* factors favors the requested award of attorneys' fees in this case. Accordingly, we find that, under the *Gunter* analysis, the percentage of recovery requested as attorneys' fees in this case is reasonable.

### 8. *The Prudential factors*

Our assessment of Class Counsel's request for attorneys' fees in light of the three *Prudential* factors is consistent with our finding of reasonableness under the *Gunter* factors. The first *Prudential* factor is intended to measure whether "the entire value of the benefits accruing to class members is properly attributable to the efforts of class counsel," *In re AT & T,* 455 F.3d 160, 172–73, or if some of those benefits are more properly attributed "to the efforts of other groups, such as government agencies conducting investigations." *Id.* at 165–66 (citing *In re Prudential,* 148 F.3d at 338). While Class Counsel were not aided in their prosecution of this case by a government investigation, Class Counsel did have the benefit of prior litigation which assigned liability to 3M for the same sort of anti-competitive conduct that has been alleged here. *Compare Stop & Shop Supermarket Co.,* 2005 WL 1213926, at *12 ("[T]his action was riskier than many other antitrust class actions because there was no prior government investigation, or prior finding of civil or criminal liability based on antitrust violations, in this case."). However, in comparison to the *Meijer* litigation, which similarly benefited from the prior litigation and settled for an amount equaling 2 percent of the class members purchases, the proposed Settlement Consideration in this action represents 18.5 percent of the Class Members purchases. Consequently, we find that this factor supports the conclusion that the percentage of recovery requested by Class Counsel for attorneys' fees in this case is reasonable.

As for the second *Prudential* factor, we find that a percentage of recovery of 35 percent is comparable to the likely "percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained." *In re AT & T,* 455 F.3d 160, 165–66 (citing *In re Prudential,* 148 F.3d at 340). *See In re Remeron,* 2005 WL 3008808, *16 ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation."); *see also In re Ikon,* 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery.").

With respect to the third *Prudential* factor, the Settlement Agreement here contains no particularly "innovative" terms to argue in favor of the requested award of attorneys' fees. *In re AT & T,* 455 F.3d 160, 165–66 (citing *In re Prudential,* 148 F.3d at 339).

In sum, we find that both the *Prudential* factors and the *Gunter* factors support our conclusion that the percentage of recovery requested by Class Counsel for attorneys' fees in this case is reasonable.

#### 9. *Lodestar cross-check*

■ The Third Circuit has suggested that, in addition to reviewing the fee award reasonableness factors, "it is 'sensible' for district courts to 'cross-check' the percentage fee award against the 'lodestar' method." *In re Rite Aid*, 396 F.3d at 305 (citing *In re Prudential*, 148 F.3d at 333). The lodestar is calculated by "multiplying the number of hours worked by the normal hourly rates of counsel. The court may then multiply the lodestar calculation to reflect the risks of nonrecovery, to reward an extraordinary result, or to encourage counsel to undertake socially useful litigation." *In re Aetna*, 2001 WL 20928, at *15 (citing *In re Ikon*, 194 F.R.D. at 195). "The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award." *In re Rite Aid*, 396 F.3d at 306. The cross-check, however, "does not trump the primary reliance on the percentage of common fund method." *Id.* at 307. Moreover, "[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records ... [T]he resulting multiplier need not fall within any pre-defined range, provided that the District Court's analysis justifies the award." *Id.* at 306–07 (footnotes and citations omitted). It is appropriate for the court to consider the multipliers utilized in comparable cases. *Id.* at 307 n. 17.

The total lodestar amount submitted to the Court by Class Counsel in this case is $5,476,800 for 10,957.5 hours of attorney and paralegal time. (Baruch Decl. ¶ 2.) The lodestar amount covers work done from the inception of the claims in this action through January 18, 2007 and is calculated at current rates. (*Id.*) The hours worked were recorded contemporaneously in the books and records that the firms maintained in the ordinary course of business. (*Id.* ¶ 5.) The lodestar amount, taken against the requested fee award, results in a lodestar multiplier of approximately 2.5.

The Third Circuit has recognized that multipliers " 'ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.' " *In re Cendant PRIDES*, 243 F.3d at 742 (quoting *In re Prudential*, 148 F.3d at 341). A multiplier of 2.5 is within this range of normal awards. *See In re Linerboard*, 2004 WL 1221350, at *16 (noting that "during 2001–2003, the average multiplier approved in common fund class actions was 4.35"). Moreover, the lack of objections by this Class of sophisticated parties to Class Counsel's request for fees supports the resulting multiplier. *See Stop & Shop Supermarket Co.*, 2005 WL 1213926, at *18 (noting that "the high lodestar multiplier (15.6) which results from the Court's award of attorneys' fees in this case is neutralized ... by the extraordinary support Plaintiffs have shown for counsels' request for fees. Not one member of the Settlement Class, which is made up of approximately 90 sophisticated businesses, objected."). Accordingly, we find that, given the facts of this case, the requested lodestar multiplier of approximately 2.5 is acceptable and does not call for a reduction in Class Counsel's requested attorneys' fees award.

Having thoroughly reviewed Class Counsel's request for attorneys' fees, we conclude that the percentage of recovery requested by Class Counsel is reasonable, and that the lodestar cross-check is consistent with a finding of reasonableness. Accordingly, we approve Class Counsel's request, and award Class Counsel

$13,558,518 in attorneys' fees to be paid from the Settlement Fund.

### C. *Incentive Award to Representative Plaintiffs*

▮ Bradburn has asked the Court to approve an incentive award in the amount of $75,000 to be paid from the Settlement Fund, because Bradburn has spent a significant amount of its own time litigating this case for the absent members of the Settlement Class. " 'Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.' " *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D.Pa.2000) (quoting *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D.Ohio 1997)). It is particularly appropriate to compensate named representative plaintiffs with incentive awards when they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of the class. *See Tenuto v. Transworld Sys., Inc.*, Civ. A. No. 99–4228, 2002 WL 188569, at *5 (E.D.Pa. Jan. 31, 2002); *see also In re Linerboard*, 2004 WL 1221350, at *18 ("Like the attorneys in this case, the class representatives have conferred benefits on all other class members and they deserve to be compensated accordingly.") (citing *In re Plastic Tableware Antitrust Litig.*, Civ. A. No. 94–3564, 1995 WL 723175 (E.D.Pa. Dec. 4, 1995)).

Bradburn has worked closely with Class Counsel throughout the four years of investigation, prosecution and settlement of the claims in this litigation. (Corr. Application at 6.) Although it is a small business, Bradburn's representatives underwent nine depositions, in addition to providing testimony at the class certification hearing, and at the time of settlement, Bradburn's representatives were preparing to attend and give testimony at the trial. (*Id.*) In opposing class certification, 3M interrogated Bradburn at length on internal family quarrels and allegations of misconduct, and claimed that these allegations disqualified Bradburn from being an adequate representative. (*Id.*) Furthermore, the Notice advised Class Members that Bradburn would apply for an incentive award up to this amount and there were no objections to the award. *See In re Remeron*, 2005 WL 3008808, at *18. Accordingly, we approve the requested incentive award.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the Settlement Agreement and Distribution Plan are fair, adequate and reasonable, and we approve them. The Court further concludes that Class Counsel's requested reimbursement of expenses in the amount of $1,011,375 and requested award of attorneys' fees representing 35% of the Settlement Fund (or $13,558,518) are fair and reasonable, and we approve them. Lastly, the Court approves Bradburn's request to be paid an incentive award in the amount of $75,000.

An appropriate Order follows.

### FINAL APPROVAL ORDER AND JUDGMENT

WHEREAS Plaintiff Bradburn Parent Teacher Store, Inc. ("Bradburn"), on behalf of itself and each Class Member, as defined herein, by and through its counsel of record in the Litigation, has asserted claims for damages and injunctive relief against 3M Company ("3M"), alleging violations of federal antitrust law;

WHEREAS, the Court entered an order on August 18, 2004 certifying a class of Plaintiffs comprising "all persons who directly purchased invisible or transparent tape from 3M Company between October 2, 1998 and the present, who have not

purchased, for resale under the class member's own label, any 'private label' invisible or transparent tape from 3M Company or any of 3M Company's competitors at any time from October 2, 1988 to the present"; and

WHEREAS, the Court has appointed R. Stephen Berry, J. Daniel Leftwich and Gregory Baruch, of the law firm of Berry & Leftwich, and Charles M. Jones, of the law firm of Jones, Osteen, Jones & Arnold, to serve as Class Counsel; and

WHEREAS, the Court directed on November 12, 2004 that potential class members be given notice of the class certification and afforded an opportunity to exclude themselves from the class; and

WHEREAS, Class Counsel certified on December 7, 2004 that such notice had been provided; and

WHEREAS the Plaintiff and 3M, desiring to resolve any and all disputes in this action, executed a Settlement Agreement dated as of September 5, 2006, which was filed with the Court on September 8, 2006; and

WHEREAS the Settlement Agreement does not constitute, and shall not be construed as or deemed to be evidence of, an admission of any fault, wrongdoing or liability by 3M or by any other person or entity; and

WHEREAS Plaintiff and 3M have agreed to entry of this Final Approval Order and Judgment (hereinafter, the "Order"); and

WHEREAS Plaintiff, on behalf of itself and each Class Member, has agreed to the release of claims specified in the Settlement Agreement; and

WHEREAS, on October 24, 2006, this Court confirmed and updated the class certification granted in its Order dated August 18, 2004, granted preliminary approval to the Settlement Agreement and directed that Notice be given to the Class as defined in the Court's Order dated August 18, 2004 and updated in the Preliminary Approval Order; and

WHEREAS, pursuant to the Preliminary Approval Order, Notice of the Settlement was given to Class Members, in accordance with Federal Rules of Civil Procedure 23(c)(2) and 23(e) and the requirements of due process (which Notice is incorporated herein by reference); and

WHEREAS an opportunity to be heard was given to all persons requesting to be heard in accordance with this Court's Orders; the Court has reviewed and considered the terms of the Settlement Agreement, and the submissions of the parties in support thereof; and after holding a hearing on April 18, 2007 at which all interested parties were given an opportunity to be heard; and

WHEREAS there is no just reason for delay;

NOW, THEREFORE, before the taking of any testimony, without trial or adjudication of any issue of fact or law herein, without any admission of liability or wrongdoing by 3M Company, and upon the consent of the Settling Parties,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

## I.

## JURISDICTION

1.1. The Court has jurisdiction over the subject matter of this action and the parties hereto. Plaintiff brought this action asserting an claim under Section 2 of the Sherman Act, 15 U.S.C. § 2. Jurisdiction lies in this Court pursuant to 28 U.S.C. §§ 1331 and 1337. Venue is proper in the Eastern District of Pennsylvania.

## II.

### DEFINITIONS

As used in this Final Approval Order and Judgment, the following definitions shall apply:

2.1. "3M" or "Defendant" means 3M Company and all of its predecessors, successors and past and present affiliates, subsidiaries, directors, officers, employees and agents.

2.2. "Class" means all Persons who directly purchased invisible or transparent tape from 3M Company between October 2, 1998 and February 10, 2006, who have not purchased, for resale under the Class Member's own label, any "private label" invisible or transparent tape from 3M Company or any of 3M Company's competitors at any time from October 2, 1988 to February 10, 2006; but excluding the following: (i) 3M Company, its subsidiaries, affiliates, officers, directors, and employees; (ii) those Persons that timely and validly requested exclusion from the Class in response to the Notice of Pendency of Class Action dated November 29, 2004, provided pursuant to the Court's November 12, 2004 Order; and (iii) any other Person that may be excluded by order of the Court.

2.3. "Class Counsel" means R. Stephen Berry, J. Daniel Leftwich, and Gregory Baruch of the law firm of Berry & Leftwich, and Charles M. Jones, of the law firm of Jones, Osteen, Jones & Arnold.

2.4. "Class Member" means any Person, including but not limited to the individual representative Plaintiff, that satisfies all of the requirements for inclusion in the Class as set forth in paragraph 2.2 herein, and that has not validly requested exclusion therefrom.

2.5. "Distribution Plan" means the plan that sets forth the process for the alloca-tion and distribution of the Net Settlement Fund, which was submitted to the Court simultaneously with the Final Approval Motion.

2.6. "Effective Date" means the first date by which all of the events and conditions specified in paragraph 7.1 of the Settlement Agreement have been met and have occurred.

2.7. "Invisible or transparent tape" means invisible or transparent tape sold within the United States for home and office use, including such products as Scotch® Magic™ tape, Scotch® transparent tape, Highland™ tapes and other invisible or transparent tapes for home and office use, but not including such products as packaging tapes, sealing tapes or masking tapes.

2.8. "Judgment" refers to this Final Approval Order and Judgment.

2.9. "Litigation" means the action pending in the United States District Court for the Eastern District of Pennsylvania titled *Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota, Mining and Manufacturing Company)*, Civil Action No. 02–7676(JP).

2.10. "Notice of Proposed Settlement" means, collectively, the communications by which the Class was notified of the existence and terms of the Settlement.

2.11. "Notice Plan" means the plan approved in the Preliminary Approval Order for notifying the Class of the Settlement.

2.12. "Plaintiff" means Bradburn Parent Teacher Store, Inc. and each of its parents, subsidiaries, affiliates, assignees, predecessors, successors, officers, directors, employees, agents, and attorneys.

2.13. "Released Claims" means the release and discharge of 3M and each of its parents, subsidiaries, divisions, affiliates, assignors, assignees, predecessors, succes-

sors, officers, directors, employees, agents and attorneys, from any and all claims asserted, or which could have been asserted, in the Litigation and any and all claims and potential claims, demands, rights, liabilities and causes of action which have arisen or could arise hereafter, whether known or unknown, whether asserted or that could have been or could hereafter be asserted by any Class Member or any parent, affiliate or subsidiary of any of such Class Member against 3M and any of its subsidiaries, affiliates, directors, officers, employees and/or agents, concerning or relating in any way to or arising in any way from any 3M discount, rebate, offer, promotion or other sales program or practice (including without limitation, programs claimed to involve the bundling of products or volume or growth rebates) concerning, including or relating in any way to the sale, promotion or distribution of invisible or transparent tape for home or office use in effect from January 1, 1993 to September 5, 2006, including without limitation claims arising under any federal and/or state antitrust laws, unfair competition laws, consumer protection laws or deceptive trade practices acts or any similar statutory or common law provisions, but excluding from this release claims relating to any alleged product defect, personal injury or breach of contract. With the exception of claims relating to any alleged product defect, personal injury or breach of contract, this release is a "general release" as that term is used in Section 1542 of the Civil Code of the State of California and all Class Members that have not opted out will expressly waive any rights under that statute or any similar law of any state or territory of the United States or any principle of common law that is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

2.14. "Settlement" means the settlement contemplated by the terms, conditions and provisions set forth in the Settlement Agreement.

2.15. "Settlement Agreement" means the Settlement Agreement dated as of September 5, 2006 by and between Plaintiff Bradburn Parent Teacher Store, Inc., on behalf of itself and each Class Member, and Defendant 3M Company, including all its thereto.

2.16. "Settlement Agreement Date" means September 5, 2006, the date as of which the Settling Parties entered into the Settlement Agreement.

2.17. "Settlement Consideration" means the amount that will be paid by 3M to or on behalf of the Class in exchange for the settlement and release of all Released Claims, as defined in paragraph 2.13 herein.

2.18. "Settling Parties" means, collectively, the Plaintiff, on behalf of itself and each Class Member, and 3M.

## III.

## FINAL APPROVAL OF SETTLEMENT

3.1. In its Order dated August 18, 2004, as confirmed and updated in the Preliminary Approval Order dated October 24, 2006, the Court certified the following Class which it now reconfirms:

all persons who directly purchased invisible or transparent tape from 3M Company between October 2, 1998 and February 10, 2006, who have not purchased, for resale under the Class Member's own label, any "private label" invisible or transparent tape from 3M Company or any of 3M Company's competitors at any time from October 2, 1988 to February 10, 2006.

3.2 Attached hereto as Exhibit 1 is the list of Persons that have timely excluded themselves from the Class, in response to

the Notice of Pendency of Class Action dated November 29, 2004, which was provided pursuant to the Court's Order dated November 12, 2004, and for which this Final Approval Order and Judgment has no force or effect.

3.3 The Court finds that the Notice and the Notice Plan were reasonably calculated to apprise the Class of all material elements of the proposed settlement, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice. The Court finds that all Class Members were afforded the opportunity to object to or comment on the Settlement, and to appear at the Final Approval Hearing. Accordingly, the Court determines that all Class Members that have not excluded themselves from this Litigation are bound by this Final Approval Order and Judgment.

3.4 The terms of the Settlement Agreement are hereby approved. The Court finds that the Settlement is fair, reasonable and adequate and in the best interests of Plaintiff and the Class as a whole. The Settlement is the product of arm's-length, serious and informed negotiations among experienced and knowledgeable counsel. The Settlement Agreement has the full force and effect of an order of this Court, and the Settling Parties are directed to implement the Settlement Agreement in accordance with its terms and conditions.

3.5. The Distribution Plan is adjudged to be fair, reasonable and adequate and is hereby approved. Class Counsel are directed to proceed with the implementation of the Distribution Plan.

3.6 No objections have been filed with respect to the Settlement and/or the Distribution Plan.

3.7. No part of the Settlement Consideration to be provided by 3M pursuant to the Settlement Agreement shall constitute, nor shall it be construed or treated as constituting, a payment in lieu of treble damages, fines, penalties, forfeitures or punitive recoveries under any state or federal laws, rules or regulations, or any other applicable statute or provision.

## IV.

## DISMISSAL OF ACTION AND RELEASES OF CLAIMS

4.1. This action is dismissed with prejudice and, except as provided in paragraph 5.1 of this Order, without costs.

4.2. The Court hereby finds that the Released Claims which Plaintiff and the Class Members, on behalf of themselves and, with respect to individuals or individually owned businesses, on behalf of each of their heirs, predecessors, successors, representatives or assigns, and, with respect to corporate entities, on behalf of each of their parents, subsidiaries, affiliates, assignees, predecessors, successors, officers, directors, employees and agents, shall fully and forever release, relinquish and discharge, by operation of this Final Approval Order and Judgment are as defined in paragraph 2.13 of this Order, i.e.,

the release and discharge of 3M and each of its parents, subsidiaries, divisions, affiliates, assignors, assignees, predecessors, successors, officers, directors, employees, agents and attorneys from any and all claims asserted, or which could have been asserted, in the Litigation and any and all claims and potential claims, demands, rights, liabilities and causes of action which have arisen or could arise hereafter, whether known or unknown, whether asserted or that could have been or could hereafter be asserted by any Class Member or any parent, affiliate or subsidiary of any of such Class Member against 3M and any of its subsidiaries, affiliates, directors, officers, employees and/or

agents, concerning or relating in any way to or arising in any way from any 3M discount, rebate, offer, promotion or other sales program or practice (including without limitation, programs claimed to involve the bundling of products or volume or growth rebates) concerning, including or relating in any way to the sale, promotion or distribution of invisible or transparent tape for home or office use in effect from January 1, 1993 to September 5, 2006, including without limitation claims arising under any federal and/or state antitrust laws, unfair competition laws, consumer protection laws or deceptive trade practices acts or any similar statutory or common law provisions, but excluding from this release claims relating to any alleged product defect, personal injury or breach of contract. With the exception of claims relating to any alleged product defect, personal injury or breach of contract, this release is a "general release" as that term is used in Section 1542 of the Civil Code of the State of California and all Class Members that have not opted out will expressly waive any rights under that statute or any similar law of any state or territory of the United States or any principle of common law that is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

4.3. Upon the Effective Date, each Class Member, on behalf of itself and, with respect to individuals or individually owned businesses, on behalf of each of their heirs, predecessors, successors, representatives or assigns, and, with respect to corporate entities, on behalf of each of their parents, subsidiaries, affiliates, assignees, predecessors, successors, officers, directors, employees and agents, shall have, shall be deemed to have and by operation of this Judgment shall have fully, finally and forever released, relinquished and discharged 3M and its attor-neys from any and all Released Claims and shall be deemed to have covenanted and agreed not to sue 3M or its attorneys with respect to the Released Claims.

4.4. Upon the Effective Date, 3M shall be deemed to have, and by operation of the Final Judgment shall have fully, finally and forever released, relinquished and discharged each and all of the Plaintiff and Class Counsel from all claims arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Litigation, other than claims for breach of the Settlement Agreement.

## V.

### FEES AND EXPENSES AND PLAINTIFF INCENTIVE AWARD

5.1 The Court approves the award of $13,558,518 to pay Class Counsel's fees plus $1,011,375 to reimburse Class Counsel for payment of costs and expenses reasonably incurred in prosecuting and settling this action.

5.2 The Court approves the award of $75,000 as an incentive award for Plaintiff Bradburn Parent Teacher Store, Inc.

5.3 No objections have been filed with respect to attorneys' fees and/or costs and expenses or with respect to Plaintiff's incentive award.

5.4 The fee award represents a multiplier of approximately 2.5 of Class Counsel's lodestar of $5,476,800, which multiplier is reasonable under the circumstances.

## VI.

### FINALITY OF JUDGMENT

6.1 The Court finds that this Final Approval Order and Judgment adjudicates all the claims, rights and liabilities of the parties to the Settlement Agreement and is

final and shall be immediately appealable. Neither this Order nor the Settlement Agreement shall constitute any evidence or admission of liability by 3M, nor shall either document or any other document relating to the Settlement be offered in evidence or used for any other purpose in this or any other matter or proceeding except as may be necessary to consummate or enforce the Settlement Agreement or the terms of this Order or if offered by 3M in responding to any action purporting to assert Released Claims.

## VII.

### RETENTION OF JURISDICTION

7.1.  Without affecting the finality of this Order, the Court retains jurisdiction for the purposes of enforcing the terms of the Settlement Agreement, to supervise the Settlement and to bar class members that have not opted out from instituting, maintaining or otherwise pursuing claims encompassed within the Released Claims. The Court also retains jurisdiction to allow any of the Settling Parties to apply to this Court at any time for such further orders and directions as may be necessary and appropriate for the construction or carrying out of the Settlement Agreement and this Final Approval Order and Judgment, for the modification of any of the provisions of this Final Approval Order and Judgment, and for the enforcement of compliance herewith.

7.2.  If this Settlement is terminated or reversed or overturned on appeal (except as to attorneys' fees, expenses, or incentive awards), then: (a) this Final Approval Order and Judgment will have no force or effect, and all negotiations, proceedings, and statements made in connection with the Settlement Agreement will be without prejudice to the right of any persons or entities, and shall not be deemed admissions as to any issue; (b) the Settling Parties expressly reserve all of their rights

and preserve all applicable defenses;  and (c) the Settling Parties shall be restored to their respective positions in this Litigation as of May 5, 2006, and proceed as if the Settlement Agreement, and all other related orders and papers, had not been executed.

7.3.  Under Rule 54 of the Federal Rules of Civil Procedure, the Court, in the interests of justice, there being no just reason for delay, expressly directs the Clerk of the Court to enter this Final Approval Order and Judgment, and hereby decrees that upon entry, it be deemed a final judgment and appealable with respect to all claims by Class Members, in accordance with the terms of the Settlement Agreement.

7.4.  The Court directs the Clerk of the Court to maintain for a period of five (5) years the record of those members of the Class listed on Exhibit 1 that timely excluded themselves from the Class.

So Ordered.

### EXHIBIT 1

### LIST OF PERSONS THAT HAVE TIMELY EXCLUDED THEMSELVES FROM THE CLASS

Advantage Office Prods, 8930 Western Way, Jacksonville FL 32256

All Printing Resources, 140 W Lake Dr, Glendale Hts IL 60139

Benjamin Office Supply, 5022 Cook Rd, Beltsville MD 20705

Bobels Office Plus, 1953 C Coopr Fostr, Amherst OH 44001

Borden Office Equipment, 141 N 5th St, Steubenville OH 43952

Bowmans Stationers Inc., 322 Parker St, Vacaville CA 95688

Brotherton Ofc Products, 130 S College Ave, Fort Collins CO 80524

Campbell Sply Co, PO Box 1464, Sioux Falls SD 57101

Crown Products Company, PO Box 696, 450 Nepperhan Avenue, Yonkers N.Y. 10701

Data Essentials Inc, 3150 Mercier St, Kansas City MO 64111

Evans Drug Co, 102 W Randolph Ave, Enid OK 73701

F & L Country Store, 55883 Cnty Rd 43, Middlebury IN 46540

Foleys Inc, PO Box 2768, 1116 Foust Ave., High Point NC 27260

Frameware Inc, 25 Sherwood Ln, Fairfield NJ 07004

Fraternal Enterprises, 4100 Baldwin Rd, Holly MI 48442

Hearn Paper Co Inc, 556 N Meridian Rd, Youngstown OH 44509

J R Freeman Co Inc, 123 S D St Ste A, San Bernardino CA 92401

Johnson Wholesale Co., Inc., 2226 Mustang Way, Madison WI 53718

Joshen Paper Packaging, 5808 Grant Ave., Cuyahoga Heights, OH 44105

Kelly Paper Co., 288 Brea Canyon Rd, City Industry CA 91789

Latschs Inc, 200 Oakcreek Dr, Lincoln NE 68528

Markus Inc, 3646 Werk Rd, Cincinnati OH 45248

Marshfield Book & Stationery Inc, M111 W McMillan St, Marshfield WI 54449

Maurer Industrial Supply, Inc, 3940 Lexington Pk, Elkhart IN 46514

Maxi Aids, 42 Executive Blvd, Farmingdale N.Y. 11735

Meyers Sply Co, 191 Sheridan Dr, Naugatuck CT 06770

Motive Parts & Supply, Po Box 708, Rapid City SD 57709

Nashville Office Interiors, Inc., PO Box 330399, 1621 Church St., Nashville TN 37203

Office Church School Spl, 780 S. Pike W., Sumter SC 29150

Office Supply Services, 2139 Supply Ct NW, Concord NC 28027

Peters Office Supply, 338 NW 9th Ave, Portland OR 97209

Publix Super Markets Inc., 2600 County Line, Lakeland FL 33811

Ray Engel Packaging Supp, 12060 Lackland Rd, St Louis MO 63146

Roanoke Moulding Design, 1715 Granby Street, Roanoke VA 24012

Rogards Office Prods, 214 S Walnut St, Champaign IL 61820

Schwarz, 8338 Austin Avenue, Morton Grove IL 60053

Schwegmans Office Supply, 502 W Broadway St, PO Box 616, West Plains MO 65775

Ship-Pac, Inc., 3000 Covington Rd, Kalamazoo MI 49001

Signcraft Screenprint, 100 A J Harle Dr, Galena IL 61036

Southwestern Bus Systems (now Southwestern Office Plus), 1007 N 8th St, Garden City KS 67846

Stephens Office Supply, 1201 West Loop N, Houston TX 77055

Stinson Stationers, 1108 Baker Street, PO Box 3399, Bakersfield CA 93305

Student Book Store, 421 E. Grand River Ave., East Lansing MI 48823

Sundry Distributors, Inc., 110 E Washington St., PO Box 1166, Athens AL 35611

Swartz & Watson (dba Accurate Office Equipment & Stebbins Office Systems), 1248 Lincoln Way East, Massillon OH 44646

Technical Library Service Inc., dba Talas, 20 W. 20th Street, New York N.Y. 10011

Tharco, 10900 Painter Avenue, Santa Fe Springs CA 90670

TSRC, Inc. (T/a The Supply Room Companies), 14140 N. Washington Hwy., PO Box 1810, Ashland VA 23005

Total Office Products, 9452 Philips Hwy, Ste. 7, Jacksonville FL 32256

Unique Novelties, 61741 Campground, Washington MI 48094

Variety Distributors, PO Box 728, Harlan IA 51537

Wuzburg Inc., 710 S. Fourth St., PO Box 710, Memphis TN 38101